IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN T. TURNER,

                Plaintiff,

v.

GARY BOUGHTON, LEBBEUS BROWN,
MARK KARTMAN, TRACY JOHNSON,
MICHAEL ROTH, STEPHEN SCHNEIDER,
MATTHEW MUTIVA, and ANGELA MINK,

                Defendants.

OPINION and ORDER

19-cv-1001-jdp

---

Plaintiff Glenn T. Turner, appearing pro se, is a prisoner at Wisconsin Secure Program Facility. Turner alleges that defendant prison officials failed to treat his mental health problems. I've allowed Turner to proceed on the following sets of Eighth Amendment claims:

- Claims for damages and injunctive relief regarding correctional officers' refusal to intervene in suicidal inmates' pleas for help until the inmates actually harm themselves. In particular, on one occasion defendants Correctional Officer Roth and Sergeant Schneiter ignored Turner's threats of self-harm and delayed in getting him help after he overdosed on pills. In a separate incident, Sergeant Mutiva disconnected the intercom and refused to call a supervisor.

- Claims for injunctive relief against defendant Tracy Johnson in an official capacity about prison policies and practices causing Psychological Services Unit (PSU) staffing shortages resulting in treatment delays, and preventing outside providers from obtaining Turner's treatment records showing his prior mental health diagnoses.

- A claim for damages against defendant Angela Mink for failing to follow up with Turner for months on his reports of depression and anxiety. This claim survived summary judgment in another of Turner's cases; I severed that claim and consolidated it with the claims in this case. *See Turner v. Boughton*, No. 17-cv-203-jdp, 2021 WL 1200597, at *24 (W.D. Wis. Mar. 30, 2021)

Defendants have filed a two-part motion, seeking dismissal of Turner's claims for compensatory damages and summary judgment on exhaustion grounds. Dkt. 19. I won't grant the motion to dismiss, but I will grant the exhaustion motion in part.

A. **Imminent-danger claims**

I granted Turner leave to proceed in forma pauperis on claims regarding November 2019 and March 2020 incidents in which correctional officers disregarded his threats of self-harm. Turner has "struck out" under 28 U.S.C. § 1915(g) which limits him to claims alleging imminent danger. The provision provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

To meet the imminent-danger requirement of 28 U.S.C. § 1915(g), a prisoner must allege a physical injury that is imminent or occurring at the time the complaint is filed and show that the threat or prison condition causing the physical injury is "real and proximate." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Heimermann v. Litscher*, 337 F.3d 781 (7th Cir. 2003); *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). But the Court of Appeals for the Seventh Circuit has instructed that § 1915 is only a "simple statutory provision governing when a prisoner must pay the filing fee for his claim," *Ciarpaglini*, 352 F.3d at 331, and has directed district courts not to apply § 1915 aggressively to dispose of prisoners' claims on the merits. *Jones v. Morton*, 409 F. App'x 936, 937 (7th Cir. 2010) ("We have cautioned against a 'chimerical' interpretation of imminent danger; the relevant time frame is not limited to the exact moment an inmate faces assault."); *Ciarpaglini*, 352 F.3d at 331 ("§ 1915(g) is not

2

a vehicle for determining the merits of a claim" and it does not require "fine-tun[ing] what is 'serious enough' to qualify for the exception"); *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) ("If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in 'imminent danger' and so could not use this proviso to seek damages . . . .").

In this case, the pleading with the relevant allegations is dated May 25, 2020. Turner alleged that—at least up to the time of his amended complaint—correctional officers on his unit would not intervene in suicidal inmates' pleas for help until they actually harmed themselves. He gave as examples November 2019 and March 2020 incidents in which correctional officers disregarded his threats of self-harm, but he alleged that the practice was ongoing. Defendants say his damages claims are ones for past harm, and that those claims should be dismissed under § 1915(g).

Most claims for compensatory damages are for past acts that inflicted harm on the plaintiff, and commonly those past acts are fully completed by the time the case is filed. But this court does not have a general rule barring claims for compensatory damages in imminent-danger cases. Defendants cite no authority for such a general rule. The only case they do cite, *Holton v. Wisconsin*, No. 11-cv-246-slc, 2011 WL 6886001 (W.D. Wis. Dec. 29, 2011), involved the dismissal of "past harm" claims that were clearly untethered from the imminent danger alleged because the events occurred at the inmate's previous prisons. Here, Turner invoked the November 2019 and March 2020 incidents to illustrate the ongoing danger posed by the correctional officers' handling of threats of self-harm. Turner may recover compensatory damages if he can prove that he has been damaged by the continuing practice.

3

**B. Exhaustion**

Defendants have filed a motion for summary judgment on the ground that Turner failed to exhaust his administrative remedies on all of his claims, with the exception of the claim against Mink. (Defendants filed their exhaustion-based summary judgment motion before I consolidated Turner's claim against Mink, originally asserted in the '203 case, with this case.)

The Prison Litigation Reform Act requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with § 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in Wisconsin Administrative Code Chapter DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendant. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

**1. Correctional officers' disregard of threats of self-harm**

Defendants contend that Turner filed only one inmate grievance about the events at issue in this case, No. WSPF-2019-20919. That grievance was about the November 2019 incident in which Turner says that defendants Roth and Schneiter ignored Turner's threats of self-harm and delayed getting help until after he overdosed on pills. Dkt. 21-2, at 6. Turner

4

responded to the motion, Dkt. 24–26, and he has also filed a "motion to move this court to moot defendants' motion." Dkt. 28. Turner's filing is not really a motion; it's a supplemental response to defendants' exhaustion motion, which I'll consider because Turner is pro se. In addition to the '20919 grievance, Turner cites grievance No. WSPF-2020-4590, about the March 2020 incident in which defendant Mutiva refused to help him. Dkt. 28-3.

Defendants note that the '20919 grievance was not fully exhausted by the date Turner filed his original complaint in this action. The same argument would apply to the '4590 grievance, filed even later. That would usually be fatal to a prisoner's claim because the prisoner generally must exhaust administrative remedies before filing suit. In rare circumstances a prisoner may exhaust remedies on certain claims after his lawsuit has been filed. *See Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (late-exhausted claims under 42 U.S.C. § 1983 properly added to amended complaint previously stating only Federal Tort Claims Act claims). But timeliness isn't Turner's problem. The grievance records show that Turner failed to fully exhaust either the '20919 or '4590 grievances: in both instances he failed to appeal the reviewing authority's dismissal to the corrections complaint examiner.

Turner argues that he is entitled to a hearing on this part of the exhaustion motion. But a hearing would be necessary only if there are genuine disputes of material fact about the exhaustion process. *See Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008). Turner does not identify any factual dispute, nor does he challenge defendants' report listing his grievances and their appeal history. *See* Dkt. 21-1.

Because Turner failed to his exhaust his administrative remedies on these claims, I will dismiss them without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). If Turner believes that he remains in danger

5

from correctional officers' practice of disregarding self-harm threats, he may file a new grievance about the problem, and then if necessary he may file a new lawsuit.

### 2. Psychological Services Unit policies

Defendants say that Turner did not file any grievances relevant to his claims about PSU policies causing (1) staffing shortages resulting in delays in psychological treatment; or (2) outside providers being blocked from viewing his prior mental health diagnoses. Turner provides several grievances that he filed both before and after his complaint and amended complaint in this action. Some of the grievances discuss more generally what Turner believes is inadequate treatment. Those do not exhaust his specific claims here because a plaintiff's grievance must "alert[ ] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Defendants note that one of the grievances submitted by Turner, No. WCI-2019-8669, "could possibly be relevant at first glance [but] is clearly not relevant upon an inspection of the evidence, because it predates the relevant incident by half a year." Dkt. 27, at 2 n.1. But the sheer age of a grievance is not necessarily dispositive to the question whether it can serve to exhaust a particular claim. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (inmate "need not file multiple, successive grievances raising the same issue . . . if the objectionable condition is continuing"). Turner's '8669 grievance raises an ongoing issue: his mental health care continued to be delayed or denied.

Turner has provided the court with the '8669 grievance, but not the complaint examiners' decisions. But the grievance history report provided by defendants shows that Turner appealed the grievance to the corrections complaint examiner, and defendants do not argue that he failed to fully exhaust it. Dkt. 21-1, at 5. Turner doesn't explicitly discuss *staffing*

6

*issues* being the cause of delays; he does say that staff told him "[he]s on the list to be seen. But nobody ever comes to see me," which suggests that there aren't enough appointments to meet capacity. Dkt. 26-3. And in any event, Turner's problem is the delay in treatment itself, not the reason for the delay. I conclude that this grievance was sufficient to alert staff "to the nature of the wrong for which redress is sought" and that under *Turley* it exhausts his claim about treatment delays even though it was filed several months before he filed his imminent-danger complaint about the lack of treatment. I will deny defendants' motion for summary judgment on this claim.

As for his claim about PSU staff refusing to share his prior diagnoses with outside providers, Turner points to two grievances that could potentially exhaust his claim. After he filed his original complaint but before he filed his amended complaint, Turner filed grievance No. WSPF-2020-3852 about staff's refusal to amend his medical record. Dkt. 28-2. But Turner failed to appeal this grievance, so it did not exhaust the available remedy. Turner fully exhausted grievance No. WSPF-2020-22432 about PSU staff's refusal to amend his medical record. Dkt. 28-4. Turner attaches the grievance rulings, not the grievance itself, so the precise nature of his complaints is unclear. In any event, Turner filed the grievance after both of his complaints in this lawsuit, so it comes too late to exhaust his claims under this case number. I will grant defendants' motion for summary judgment on these claims.

**C. Conclusion**

I will dismiss, on exhaustion grounds, Turner's claims about correctional officers' refusal to intervene in suicidal inmates' pleas for help and his claim about PSU staff preventing outside providers from obtaining his treatment records. This case will proceed with Turner's claim about staffing shortages causing delays in his treatment. Defendants have not yet had a chance

7

to file a substantive motion for summary judgment on that claim. Turner's claim (severed from the '203 case) against defendant Angela Mink also remains in this case and has already survived summary judgment.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss in part plaintiff Glenn T. Turner's claims, Dkt. 19, is DENIED.

2. Defendants' motion for summary judgment on exhaustion grounds, Dkt. 19, is GRANTED in part. Plaintiff's claims about correctional officers' refusal to intervene in suicidal inmates' pleas for help and his claim about PSU staff preventing outside providers from obtaining his treatment records are DISMISSED without prejudice.

Entered September 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge